UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TONI ORRILL                                    CIVIL ACTION

VERSUS                                         NO: 06-10012

MORTGAGE ELECTRONIC REGISTRATION               SECTION: R
SYS., INC., ET AL.

## **ORDER AND REASONS**

Before the Court is defendants' and counterclaim plaintiffs' Motion to Reurge/Reset Motions for Partial Summary Judgment (R. Doc. 127). This motion seeks to resurrect two motions for partial summary judgment that were filed but mooted on account of an ultimately unsuccessful settlement between the parties (R. Docs. 93, 100). The Court GRANTS the Motion to Reurge. For the following reasons, the Court GRANTS the motions for partial summary judgment as well.[1]

## **I. Background**

In August of 2005, plaintiff Toni Orrill executed an adjustable rate note payable to Stonecreek Funding Corporation

---

[1] Plaintiff, who appears *pro se*, had filed what appears to be an opposition to one of the motions for partial summary judgment. R. Doc. 104. She has not moved to reurge this response. Out of an abundance of caution, and in recognition of the traditional liberal treatment of *pro se* litigants, the Court will disinter this opposition as well.

and a mortgage in favor of Mortgage Electronic Registration Systems ("MERS"). This was the same month that Hurricane Katrina struck southern Louisiana. The storm caused considerable damage to Orrill's home in Covington, Louisiana.

In January of 2006, Orrill filed this action in the 22nd Judicial District Court for St. Tammany Parish against Stonecreek and MERS, alleging that she sustained damages when Stonecreek, her home mortgage lender, unlawfully delayed in providing her insurance proceeds for the hurricane damage to her home. With their answer, defendants filed a Reconventional Demand for Amounts Due on Note and for Recognition of Security Interest and Mortgage, alleging that plaintiff had defaulted under her note and mortgage. Plaintiff then moved to amend her complaint and added two more defendants, Countrywide Mortgage Ventures and Countrywide Home Loans, against which she asserted a similar claim as her claim against Stonecreek.[2]

In November of 2006, defendants removed the case to this Court.[3] After litigation had proceeded for some time, the parties entered into a settlement and the case was dismissed. This dismissal provided a 60-day window which either party could move to reopen the case, and defendants moved to extend this

---

[2] Unless otherwise specified, the term "defendants" refers to all four entities against which Orrill asserted claims. The term acknowledges that they are also counterclaim plaintiffs.

[3] R. Doc. 1.

deadline several times.  When it became clear that the settlement would not be consummated, however, the defendants exercised their right to reopen this case.[4]  Before the case was provisionally dismissed, defendants had filed two motions for partial summary judgment, which had not yet been ruled upon by the Court.  Now that the case has been reopened, defendants reurge those motions and they are now before the Court.[5]

One of these motions seeks summary judgment on the claims made in Orrill's complaint and amended complaint.  Defendants contend that they disbursed the insurance proceeds back to Orrill in a timely fashion and in accordance with the terms of her mortgage.  They also assert that Orrill has made no claims against two of the four defendants, and summary judgment in favor of these two is appropriate.  This motion is unopposed.  Another of these motions seeks summary judgment on defendants' counterclaim.  Orrill filed an opposition to this motion.

## II. Legal Standard

---

[4] R. Doc. 119.

[5] Defendants state that the facts as presented in their two motions for summary judgment have not changed.  They state that the only exception is that Orrill has forwarded $1,000 to Countrywide Home Loans in connection with the parties' agreement.  R. Doc. 127-1 at 2.  This amount will be deducted from the total amount Orrill is found to owe defendants.

3

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[6] When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[7] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[8]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[9] The nonmoving party can then defeat the motion by either countering

---

[6] FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[7] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[8] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[9] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[10]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[11] The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.[12] The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial.[13]

Finally, courts construe briefs submitted by *pro se* litigants liberally, and a court will "apply less stringent standards to parties proceeding *pro se* than to parties

---

[10] *Id.* at 1265.

[11] *See Celotex*, 477 U.S. at 325.

[12] *See id.* at 324.

[13] *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith ex rel. Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

5

represented by counsel."[14] This does not mean, however, that a court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing."[15] Furthermore, the evidentiary requirements of summary judgment apply equally to *pro se* litigants as they do to represented parties. "Although pro se litigants are not held to the same standards of compliance with formal or technical pleading rules applied to attorneys, [the Fifth Circuit has] never allowed such litigants to oppose summary judgments by the use of unsworn materials."[16]

**III. Discussion**

*A. Defendants' Motion for Summary Judgment on Plaintiffs' Claims*

Defendants initially move for summary judgment on the claims asserted in Orrill's complaint. First, they contend that they paid insurance proceeds to Orrill in accordance with the policy and the law. Second, defendants point out that Orrill has made no identifiable claim against two of the defendants: MERS and

---

[14] *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam); *see also Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 n.1 (5th Cir. 1983).

[15] *Jones v. Alfred*, No. 09-40256, 2009 WL 4250636, at *2 (5th Cir. Nov. 30, 2009).

[16] *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980); *see also Morales v. Boyd*, 304 Fed. App'x 315, 318 (5th Cir. 2008) (quoting *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981)).

Countrywide Mortgage Ventures. They assert that neither the complaint nor the amended complaint identifies any acts on behalf of these two defendants, and that Orrill could not, during her deposition, articulate any specific acts that these defendants took that may have wronged her. Because the Court finds the first ground sufficient for summary judgment against all four defendants, it does not address the second argument.

The mortgage provides as follows:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.[17]

Orrill's central contention is that after Hurricane Katrina, she received slightly more than $135,000 from Louisiana Citizens Property Insurance Corporation, which was made payable to Orrill and Stonecreek. Stonecreek placed this sum in escrow pending Orrill's repair of the property, but she alleges that Stonecreek delayed in paying out the proceeds to her even after she had made

---

[17] R. Doc. 93-4 at 10.

substantial repairs and Stonecreek had inspected the premises. Louisiana law requires that the holder of a security interest in the property "cooperate fully with the claimant and the claimant's insurer in releasing funds in a timely manner to replace or repair the damaged property," and that once the property was repaired to the mortgage-holder's satisfaction, the funds placed in escrow are required to be returned to the claimant.[18] Orrill contends that this delay caused her irreparable harm and injured her creditworthiness.

Defendants, in response, contend that they paid insurance proceeds to Orrill in accordance with the mortgage and the law. The original complaint states that the total cost of all repairs to Orrill's home was slightly more than $96,000.[19] Defendants contend that Orrill received the $135,000 from her insurance company on approximately November 9, 2005.[20] On November 16, she forwarded to Stonecreek one of the two insurance checks, which was in the amount of slightly less than $24,000, and Stonecreek endorsed and returned the check to Orrill no later than December

---

[18] LA. REV. STAT. § 6:337; *see also* 10:9-211 (2005), *repealed by* 2006 La. Sess. Law Serv. 1st Ex. Sess. Act 14 (S.B. 31).

[19] R. Doc. 1-2 at 2. Orrill's figures from the complaint are difficult to interpret. She also appears to have allotted herself 20% profit and overhead on work completed for acting as her own general contractor. *Id.* at 2-3.

[20] R. Doc. 93, Ex. 2 at 159-60. All figures are approximate.

7.[21] Defendants contend that they did this "so that [Orrill] could negotiate the check and use its proceeds."[22] Orrill also forwarded to Stonecreek the second check, which was for approximately $111,000, on December 5,[23] and on December 8 Stonecreek forwarded approximately $39,000 of this amount to Orrill.[24] By this time, Stonecreek had disbursed approximately $63,000 of the $135,000 to Orrill, and it conducted an inspection of the property on December 28.

Countrywide, which had assumed servicing rights to Orrill's loan, inspected the property on February 15, 2006, and determined that the repairs were approximately 50% complete.[25] On February 24, after this inspection had been completed and a report had been written, it issued another payment to Orrill for slightly more than $36,000.[26] Countrywide inspected the property again on March 28, 2006, and after determining that the repairs were about 90% complete, it disbursed the remaining funds to Orrill over the next two days.[27] Orrill does not dispute that defendants have

---

[21] *Id.*, Ex. 2 at 178, Ex. 3 at 2.

[22] R. Doc. 93 at 3.

[23] *Id.*, Ex. 2 at 159.

[24] *Id.*, Ex. 2 at 185, Ex. 3 at 2.

[25] *Id.*, Ex. 3 at 2.

[26] *Id.*, Ex. 3 at 2.

[27] *Id.*, Ex. 3 at 2.

disbursed to her all the insurance proceeds at issue.[28]

Defendants argue that these disbursements were made in accordance with the mortgage and the applicable law. They also contend that Orrill has presented no evidence of any damages that might have resulted from any failure to disburse payments.

The Court holds that defendants are entitled to summary judgment on this issue. The evidence adduced in support of defendants' motion depicts nothing more than a good-faith dialogue regarding the amount of insurance payments that should have been disbursed at any time. Defendants returned one of the two insurance checks in full very shortly after receiving it from Orrill, and it forwarded a large portion of the other check the next day. By this point — December 8, 2005, which was less than a month after she received the insurance checks — Orrill had received $63,000 from defendants, which is well over half of the $96,000 in repair costs and slightly less than half of the total amount of the insurance proceeds. Defendants then disbursed the remainder of the funds over the next few months in accordance with their estimates of the progress that had been made on the repairs. The entire sum of the insurance proceeds had been disbursed within five months of Orrill's receipt of the checks.

Orrill has pointed to no case law that would support a conclusion that this timeline is unlawful or in violation of the

---

[28] *Id.*, Ex. 2 at 60.

mortgage. Defendants, in contrast, point to the case of *Suffern v. Countrywide Home Loans*, in which a plaintiff brought fraud and breach-of-contract claims for alleged delays in a mortgage-holder's disbursement of funds following Hurricane Katrina.[29] There, the plaintiffs, whose home had been damaged during Hurricane Katrina, received slightly more than $150,000 from their insurer on November 7, 2005, and they forwarded this amount to their mortgage-holder.[30] They requested a disbursement at some point in November. On December 19, the mortgage-holder disbursed $15,000, and it inspected the property on December 28. Determining that the repairs were approximately 85% complete, it disbursed the remainder of the funds on January 19, 2006. The Court denied plaintiffs' arguments, noting that the mortgage did not require the mortgage-holder to conduct inspections within any particular time; it required only that the inspections be "prompt." The mortgage-holder inspected the property within a month after the plaintiffs had submitted a written request, and the court noted that this might very well be prompt, considering the number of inspections that needed to be conducted after Katrina. "However, even if the delay was not 'prompt,' Countrywide remedied the potential delay by providing Plaintiffs with $15,000 on December 19, prior to conducting any inspection."

---

[29] No. 06-358, 2006 WL 1999204 (E.D. La. July 14, 2006).

[30] *Id.*, at *1.

The court also noted that the full amount was paid within three weeks of the inspection.[31]

Here, as in *Suffern*, defendants made significant advance payments to Orrill before they had conducted any inspections. Although Orrill does not indicate when she requested the disbursement of additional funds, defendants made their initial inspection in December of 2005, and they made additional inspections over the next few months. They made additional payments that were commensurate with the level of progress that had been made on the repairs, and, as in *Suffern*, they disbursed the full amount after determining that the repairs had been substantially completed.

In sum, the defendants, after forwarding Orrill a sizeable up-front payment, disbursed the entirety of the insurance proceeds in accordance with their evaluation of the progress of the repairs. The evidence indicates that they cooperated in the process and their payments were consonant with the level of progress that Orrill had made on the property. In addition, Orrill has presented no arguments or evidence beyond her initial complaint to suggest otherwise. She has therefore failed to demonstrate how defendants' actions were unlawful, or to point to any contested issues of fact that may call the lawfulness of defendants' conduct into question. Summary judgment for

---

[31] *Id.*

defendants is appropriate.

*B. Defendants' Motion for Summary Judgment on their Counterclaims*

Defendants next move for summary judgment on their counterclaim. They contend that Orrill is in default under the note and mortgage and ask for a judgment to be entered for the full amounts due under those documents.

The Court begins with the language of the mortgage. Guiding principles for construing contracts in Louisiana are set forth by the Louisiana Civil Code.[32] "Interpretation of a contract is the determination of the common intent of the parties."[33] Such intent is to be derived from the language of the contract itself. If that language is "clear and explicit and lead[s] to no absurd consequences, no further interpretation may be made in search of the parties' intent."[34] Words "must be given their generally prevailing meaning," and terms of art are interpreted as such only when a technical matter is at stake.[35]

The note, under the heading "BORROWER'S PROMISE TO PAY,"

---

[32] *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007); *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). The lease specifies that the controlling law shall be the law of the state in which the premises are located, which is Louisiana. *See* R. Doc. 98, Ex. A at 87.

[33] LA. CIV. CODE ANN. art. 2045.

[34] *Id.* art. 2046.

[35] *Id.* art. 2047.

13

makes clear that in return for a loan Orrill promised to pay a principal of $246,150 to Stonecreek Funding Corporation. The unpaid principal accrues interest at a yearly rate of 8.125%.[36] Orrill was to make payments on the first of every month beginning on October 1, 2005, and the initial monthly payments were to be in the amount of $1,827.66.[37] If any payments are outstanding on September 1, 2035, Orrill was to pay all those amounts off in full.[38]

The note further specifies that if Orrill fails to make monthly payments by the due date, she will be in default. If she defaults, "the Note Holder may send [her] a written notice telling [her] that if [she does] not pay the overdue amount by a certain date, the Note Holder may require [her] to pay immediately the full amount of Principal which has not been paid and all the interest that [she owes] on that amount. That date must be at least 30 days after the date on which the notice is mailed to [her] or delivered by other means."[39] If the holder of the note requires Orrill to pay immediately as described, it has "the right to be paid back by [her] for all of its costs and expenses in enforcing this Note to the extent not prohibited by

---

[36] R. Doc. 93-4 at 26.

[37] *Id.* at 26-27.

[38] *Id.* at 26.

[39] *Id.* at 28.

14

applicable law.  Those expenses include, for example, reasonable attorneys' fees."[40]

The mortgage itself contains similar provisions.  It states that the note requires Orrill to pay $246,150 in regular payments before September 1, 2035.  It further states that it "secures to [Stonecreek]: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of [Orrill's] covenants and agreements under this Security Agreement and the Note.  For this purpose, [Orrill] does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following property."  It then goes on to describe Orrill's home in Covington, Louisiana.[41]

The mortgage, too, provides for recourse in the event of Orrill's default.  It specifies that, if Orrill breaches any covenant in the mortgage or fails to pay principal, interest, or other fees as described in the note, Stonecreek can give her notice of default.  The notice must contain certain information, including a date upon which default must be cured and notice that failure to cure the default "may result in acceleration of the sums secured by this Security Instrument and the sale of the

---

[40] *Id.*

[41] *Id.* at 6.

Property." Accordingly, after the notice of default is given, "[i]f the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment."[42]

The mortgage also contains a provision for Stonecreek's foreclosure on the property in the event of default. "Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Agreement, in principal, interest, costs, expenses, attorneys' fees and other fees and charges."[43]

The parties do not contest that Orrill executed the note and the mortgage, and they further do not appear to disagree that Orrill has failed to make the vast majority of her mortgage

---

[42] *Id.* at 16.

[43] *Id.*

16

payments.[44]  Accordingly, on February 6, 2006, Countrywide sent Orrill a notice of default, which indicated that a payment must be made by March 8 or else payments would be accelerated and foreclosure proceedings would be initiated.[45]  According to the evidence presented, Orrill made no payments to cure the default.[46]

Orrill provides no evidence to contest these determinations.[47]  She does, however, assert that issues of fact preclude summary judgment, and she makes several arguments in support of her position.  First, she contends that a loan deferment was issued by both Stonecreek and Countrywide that was in place until August of 2006.  She explains that defendants

---

[44] *See* R. Doc. 100, Ex. A at 2; *see also id.*, Ex. B at 2 (Orrill's answer to defendants' counterclaim, admitting that she had not made any payments from October 2005 to September 2006). Again, defendants admit that Orrill made one $1,000 payment in accordance with the parties' settlement agreement.

[45] *Id.*, Ex. A-3, Ex. A at 2.

[46] *Id.*, Ex. A at 2.

[47] Her opposition to summary judgment consists of statements that appear testimonial in nature, but it is not a sworn statement.  *Pro se* litigants receive liberal treatment in federal court, but they are not relieved of their obligation to submit actual evidence in support of their arguments.  The Fifth Circuit has specifically rejected the notion that a *pro se* litigant may rely on unsworn materials at the summary-judgment stage. *See Morales v. Boyd*, 304 Fed. App'x at 318 (quoting *Barker*, 651 F.2d at 1123).  Even if Orrill's opposition were a sworn statement, however, it would still not create an issue of fact as to whether she is in default under the mortgage; the only factual issues it might create would concern the amounts due.

17

promised her that the deferred amount would be "worked into" her mortgage and that her monthly payments would change. This option, she argues, was offered to her in the default letter, and she took it. Accordingly, defendants made no request for payments until August of 2006.

Defendants, however, contend that no such deferment, modification, or workout agreement was issued, and Orrill has presented no evidence to dispute this.[48] Such an agreement must be made in writing, and Orrill has not pointed to any signed, written agreement that might indicate that defendants entered into a modification of the obligations explained in the mortgage and note.[49] She has therefore not created an genuine issue of material fact on this point.

Orrill also argues that in December of 2005 she submitted a check in an effort to make four months of payments on the loan. Again, Orrill provides no summary-judgment evidence to support this contention. Defendants point out that Orrill did submit a check as she contends, but she did not actually make these payments. Orrill explained in her deposition that she offered to make payments on her mortgage as long as Stonecreek disbursed

---

[48] R. Doc. 107, Ex. 2 at 2.

[49] *See* LA. REV. STAT. §§ 6:1122 (requiring "credit agreements" to be signed and in writing, expressing consideration, and laying out terms and conditions), 6:1123(A)(3); *see also Whitney Nat. Bank v. Rockwell*, 661 So. 2d 1375, 1332-33 (La. 1995).

18

insurance funds to her with which she could make the payments. She specifically noted that she could not make these payments unless Stonecreek disbursed this money because she was unable to make any payments without the disbursement.[50] This was thus not a payment; it was an *offer* to pay. And Orrill's deposition testimony makes clear that the offer was rejected.[51] She therefore has not identified any issues of fact.

She next asserts that defendants violated banking laws by delaying payments, and that their "bad faith and abuse of the judicial process warrants thoughtful investigation and remedy."[52] These statements, without more, are plainly insufficient to survive summary judgment. She does not identify the banking laws that defendants are alleged to have violated, nor does she provide any specifics about how they may have acted in bad faith or abused the judicial process. Finally, she contends that she suffered emotional and physical damages. A mere statement that one has suffered damages is not sufficient to prevail on a summary-judgment motion.

In sum, the parties do not appear to disagree that Orrill is in default and has not made any payments on her mortgage. Orrill has identified no reasons why the note and the mortgage would not

---

[50] R. Doc. 107, Ex. 1 at 124-27.

[51] *Id.* at 126.

[52] R. Doc. 104 at 1.

19

be valid or enforceable, nor has she adequately demonstrated that the loans were deferred or that any payments were in fact made upon them. Summary judgment in favor of defendants is therefore appropriate.

## III. Conclusion

Defendants' motion to reurge and motions for partial summary judgment are all GRANTED to the extent that a valid note and mortgage exists between the parties and Orrill is in default under them. Defendants, in addition, ask for judgment making a number of recognitions, including a recognition that the security interests created by the note and the mortgage were perfected. The Court makes no determination on issues not discussed in this Order. It has heard no evidence as to the perfection of the security interests and any determination as to perfection is not necessary for the disposition of this matter.

New Orleans, Louisiana, this \_\_\_\_1st\_\_\_\_ day of July, 2010.

_____
**SARAH S. VANCE
UNITED STATES DISTRICT JUDGE**